UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Eugene F. Ladd,

        Plaintiff,

        v.                                   Civil Action No. 1:16-cv-67

Lisa Menard, Commissioner,
Vermont Department of Corrections, and
Deborah Thibault, Superintendent,
Burlington Probation and Parole Office,

        Defendants.

## REPORT AND RECOMMENDATION
(Doc. 11)

Plaintiff Eugene Ladd, proceeding *pro se*, brings this action pursuant to 42 U.S.C.

§ 1983 for injunctive relief against Defendants Lisa Menard, Commissioner of the

Vermont Department of Corrections (DOC), and Deborah Thibault, Superintendent,

Burlington Probation and Parole Office.  Ladd alleges that Defendants have unlawfully

prohibited him from residing in Chittenden County on furlough release from prison.

(Doc. 5 at 7, 8.)  According to Ladd, Defendants violated his rights to freedom of

association and equal protection under the First and Fourteenth Amendments to the U.S.

Constitution (*id.* at 7), subjected him to cruel and unusual punishment under the Eighth

Amendment (*id.* at 8), and did not have statutory authority to restrict his residence, thus

acting with "extreme and arbitrary abuse of discretion" (*id.* at 7).

Now pending before the Court is Menard and Thibault's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 11.)  Ladd opposes the Motion.  (Doc. 15.)  For the reasons that follow, I recommend that the Court GRANT Defendants' Motion to Dismiss, with leave to amend the Complaint.

## Background

For purposes of deciding Defendants' Motion to Dismiss, the Court accepts as true the factual allegations contained in the Complaint, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and views those facts "'in the light most favorable'" to Ladd, *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 148 (2d Cir. 2010)).

At the time he filed his Complaint in this Court, Ladd was an inmate at the Southeast State Correctional Facility in Windsor, Vermont.  (Doc. 5 at 1.)  He has since been released from that facility and resides at an address in Newport.  (Doc. 20.)  The Complaint indicates that Ladd's release on "Conditional Re-Entry[] Furlough" is the status at issue here, with the focus of the Complaint specifically on a release condition that prohibits him from living in Chittenden County.  (Doc. 5 at 8.)  Ladd is from Chittenden County, he has friends and relatives there, and his girlfriend lived in the Burlington area but has now been "forced to relocate" due to the condition placed on Ladd's residence.  (*Id.* at 4.)  His convictions also are "related" to the county.  (*Id.*)

Ladd first grieved this residency prohibition in August 2012, submitting a "Departmental Informal Grievance" to the Grievance Coordinator of Lee Adjustment Center, who faxes out-of-state grievances to the DOC. (*Id.* at 5.) The response he got, however, was "unsatisfactory." (*Id.*) Next, Ladd submitted a formal grievance and received no response. (*Id.*) In December 2012, he "submitted letters to the Field Services Executive and Director of Classification along with the Decision Appeal to the Corrections Executive(s)." (*Id.*) He received no response from the Director of Classification (*id.* at 6), but received yet another "unsatisfactory" response, presumably from the Field Services Executive (*id.* at 5–6). That response failed to elaborate on the reasons for the residency prohibition or provide more information about it. (*Id.*) In January 2013, he submitted a letter to the Commissioner of the DOC, but he was similarly dissatisfied with the response from the Commissioner, "who did not elaborate" about the "reasons or justifications" for the "banishment and exile from the Chittenden County area" or provide more information about the decision. (*Id.* at 6.)

Ladd asserts that he has "exhausted the Department's administrative remedies, and to date has not received any forms of factual basis for the banishment or exile" that was decided at a 2005 "Central Case Staffing" meeting. (*Id.* at 7; *see also id.* at 6.)

Ladd filed his Complaint on March 15, 2016. (Doc. 5.) Defendants filed their Motion to Dismiss on May 13, 2016 (Doc. 11), to which Ladd responded on June 27, 2016 (Doc. 15). Defendants filed a Reply on July 8, 2016. (Doc. 16.) A hearing on the Motion to Dismiss was held on August 23, 2016, and the Motion was taken under advisement. (Doc. 19.)

## Discussion

**I.      Rule 12(b)(6)**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678); *see also* Fed. R. Civ. P. 8(a)(2).  Also, on a 12(b)(6) motion, "the Court may consider documents attached as an exhibit [to the complaint] or incorporated by reference, documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken." *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "Although plausibility is not a 'probability requirement,' [p]laintiffs must allege facts that permit 'more than a sheer possibility that a defendant has acted unlawfully.'" *Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

Two principles guide a plausibility determination.  *See Iqbal*, 556 U.S. at 678. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Turkmen*, 789 F.3d at 233 (quoting *Iqbal*, 556 U.S. at 678).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at

679 (citing *Twombly*, 550 U.S. at 556).  "Determining whether a complaint states a

plausible claim for relief will . . . be a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense."  *Id.* (citing *Iqbal v. Hasty*,

490 F.3d 143, 157–58 (2d Cir. 2007), *rev'd*, 556 U.S. 662 (2009)).

      Where, as here, a complaint is filed *pro se*, it "must be construed liberally with

'special solicitude' and interpreted to raise the strongest claims that it suggests."  *Hogan*

*v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122

(2d Cir. 2011)).  "This policy of liberally construing *pro se* submissions is driven by the

understanding that '[i]mplicit in the right of self-representation is an obligation on the

part of the court to make reasonable allowances to protect *pro se* litigants from

inadvertent forfeiture of important rights because of their lack of legal training.'"

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam)

(alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Consequently, when parties seek dismissal of *pro se* complaints, "courts 'apply[ ] a more

flexible standard to evaluate their sufficiency than we would when reviewing a complaint

submitted by counsel.'"  *Thompson v. Pallito*, 949 F. Supp. 2d 558, 571 (D. Vt. 2013)

(alteration in original) (quoting *Lerman v. Bd. of Elections in the City of N.Y.*, 232 F.3d

135, 140 (2d Cir. 2000)).  Still, a complaint filed by a *pro se* plaintiff "must state a

plausible claim for relief."  *Hogan*, 738 F.3d at 515.

## II.    Section 1983

      Under 42 U.S.C. § 1983, a claimant may bring suit "against '[e]very person who,

under color of any statute . . . of any State . . . subjects, or causes to be subjected, any

citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)). "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thompson*, 949 F. Supp. 2d at 569 (quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).

## III. "Person" Under § 1983

Defendants argue that Ladd's § 1983 claims against them should be dismissed because Ladd has sued them in their official and individual capacities, and officials sued in their official capacities are not "persons" under § 1983. (Doc. 11 at 2–3.) Ladd responds by clarifying that he is suing Defendants in their official capacities for injunctive relief. (Doc. 15 at 4.)

However, at the August 23, 2016 hearing, Ladd indicated that he was also seeking injunctive relief against Defendants in their individual capacities if such relief is permitted by law. It appears that plaintiffs have been permitted to seek such relief. *See Stevens v. New York*, 691 F. Supp. 2d 392, 398 (S.D.N.Y. 2009) ("[T]he Eleventh

Amendment does not bar suits against state officials in their individual capacities, or suits for prospective, injunctive relief against defendants in their individual or official capacities." (citation omitted)); *Elmer v. Fischer*, No. 09–CV–6505CJS, 2013 WL 6628258, at *3 (W.D.N.Y. Dec. 16, 2013) ("Thus, the Eleventh Amendment does not bar Plaintiff's claims for declaratory or injunctive relief against Defendants in their individual and official capacities."). Nonetheless, Defendants did not expressly move for dismissal of any individual-capacity claims for injunctive relief on the basis that Defendants in their individual capacities are not persons under § 1983. (*See* Doc. 11 at 2–3.) Thus, any claims for injunctive relief against Defendants in their individual capacities should not be dismissed on this ground, and I address only the official-capacity claims below.

The U.S. Supreme Court has held that states and state officials sued in their official capacities are not "persons" under § 1983. *Dube v. State Univ. of New York*, 900 F.2d 587, 595 (2d Cir. 1990) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)). The Supreme Court qualified this holding, however, "with the statement that 'a State official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State."'" *Id.* (quoting *Will*, 491 U.S. at 71 n.10); *see also Ex parte Young*, 209 U.S. 123 (1908).

Here, Ladd is "seeking an injunction" against Defendants that will "allow him to return to the Chittenden County area under supervised release," and "invalidate the condition of plaintiff's release that prohibits him to return to Chittenden County."

7

(Doc. 5 at 9.)  Ladd's Response then indicates that he is seeking such relief against Defendants in their "official capacities."  (Doc. 15 at 4.)  Because Ladd seeks prospective injunctive relief against Defendants Menard and Thibault in their official capacities, they are "persons" under § 1983.  Accordingly, Ladd's § 1983 claims against Defendants should not be dismissed on this ground.

## IV.     First Amendment Right to Freedom of Association

Defendants argue that Ladd has failed to state a claim for a violation of his First Amendment right to the freedom of association because "there is no fundamental right to reside in a particular place."  (Doc. 11 at 4.)  In response, Ladd argues Defendants unlawfully banished him from the "Burlington/Chittenden County area."  (Doc. 15 at 5.)

The right to the freedom of association under the First Amendment "carries two distinct meanings in federal constitutional jurisprudence."  *Corso v. Fischer*, 983 F. Supp. 2d 320, 330 (S.D.N.Y. 2013).  First, "freedom of association" concerns "the 'right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.'"  *Id.* (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984)).  Second, the U.S. Supreme Court has also "concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme."  *Roberts*, 468 U.S. at 617–18.  The "personal affiliations" that warrant such protection are "those that attend the creation and sustenance of a family," including "cohabitation with one's relatives."  *Id.* at 619.

8

Although "[i]t 'has not been authoritatively determined' whether this right to intimate association is implied in the First Amendment or exists as a fundamental liberty interest protected by the Due Process Clause of the Fourteenth Amendment," *Corso*, 983 F. Supp. 2d at 330 (quoting *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999)), the Supreme Court has indicated that "[p]rotecting [one's personal relationships and close ties with others] from unwarranted state interference therefore safeguards the ability independently to define one's identity that is central to any concept of liberty." *Roberts*, 468 U.S. at 619.  The Second Circuit has interpreted the Supreme Court's language in *Roberts* to "suggest[] that [the intimate-association] right is a component of the personal liberty protected by the Due Process Clause." *Adler*, 185 F.3d at 42; *see also Uwadiegwu v. Dep't of Soc. Servs.*, 91 F. Supp. 3d 391, 397 (E.D.N.Y. 2015), *aff'd*, 639 F. App'x 13 (2d Cir. 2016) (summary order) ("Where the intimate[-]association right at issue is tied to familial relationships and is independent of First Amendment retaliation concerns, however, the Second Circuit has employed an analysis under the framework of the Fourteenth Amendment right to substantive due process.").

Leaving aside Ladd's "furlough" status initially, his right to intimate association is not directly implicated in this case.  He claims he has a "right to return to and reside in the Chittenden County and the Burlington city area" (Doc. 5 at 8), and suggests the residency limitation impedes his relationships with family and friends (*see id.* at 4).  It is true that in the "liberty" context of the Due Process Clause of the Fourteenth Amendment, the Supreme Court has set forth heightened protections for familial relationships.  For instance, in *Moore v. City of East Cleveland*, the Supreme Court held

9

unconstitutional an ordinance that defined "family" in such a way as to prevent a grandmother from living with her grandson.  *Moore v. City of East Cleveland*, 431 U.S. 494, 496, 498 (1977) (plurality opinion).  A plurality of the Supreme Court deemed the ordinance to be an "intrusive regulation of the family" that, in particular, "intrudes on choices concerning family living arrangements."  *Id.* at 499.  But unlike the regulation in *Moore*, Defendants here have not directly intruded on Ladd's family relationships; in fact, Ladd's Complaint states that the only restriction of his furlough relates to the location of his residence.  (*See* Doc. 5 at 8 (suggesting the restriction may prohibit him from returning to Chittenden County as well: "[P]laintiff is still prohibited from return to his county . . . .").)  Defendants have not prohibited Ladd from living in the same residence as, or associating and interacting with, family or other relatives.

Doe v. Miller, cited by Defendants, is also instructive on this point.  405 F.3d 700 (8th Cir. 2005).  Again, like the Supreme Court in *Moore*, the court in *Miller* focused on substantive due process, and not freedom of association specifically.  But the court did discuss the "liberty" interests surrounding intimate family relationships.  The statute at issue in *Miller* prohibited "a person convicted of certain sex offenses involving minors from residing within 2000 feet of a school or a registered child care facility."  *Id.* at 704.  The Eighth Circuit found the statute constitutional and stated that it "does not operate directly on the family relationship.  Although the law restricts where a residence may be located, nothing in the statute limits who may live with the Does in their residences."  *Id.* at 710.  Discussing the Supreme Court's reasoning in *Moore*, the Eighth Circuit stated, "The plurality in *Moore* emphasized this distinction, observing that the impact on

family was 'no mere incidental result of the ordinance,' because '[o]n its face [the ordinance] selects certain categories of relatives who may live together and declares that others may not.'" *Id.* (alterations in original) (quoting *Moore*, 431 U.S. at 498–99). The court thus concluded that "the reasoning of the *Moore* plurality does not require strict scrutiny of a regulation that has an *incidental or unintended effect* on the family." *Id.* (emphasis added) (citing *Hameetman v. City of Chicago*, 776 F.2d 636, 643 (7th Cir. 1985)). Here too, Ladd's residency restriction has only an incidental impact, if any, on his relationship with and ties to his family. Thus, Ladd has not alleged a burdened intimate association.

Alternatively, assuming Ladd's Complaint does in fact implicate an intimate association, Ladd's status on "Conditional Re-Entry[] Furlough" affects the analysis, and I find no plausible claim for a violation of Ladd's freedom of association. (*See* Doc. 5 at 8.) Under Vermont law, "[t]he Department may extend the limits of the place of confinement of an offender at any correctional facility if the offender agrees to comply with such conditions of supervision the Department, in its sole discretion, deems appropriate for that offender's furlough." 28 V.S.A. § 808(a). When an offender has served the minimum term of his sentence, "[t]he offender may be placed in a program of conditional reentry status by the Department." *Id.* § 808(a)(6). Importantly, "[t]he extension of the limits of the place of confinement authorized by this section shall in no way be interpreted as a probation or parole of the offender, but shall constitute *solely a permitted extension of the limits of the place of confinement . . . ."* *Id.* § 808(c) (emphasis added).

Relevant here, "the case law specifically differentiates between probation and parole on the one hand, and furlough and imprisonment on the other." *Byrne v. Trudell*, No. 1:12–cv–245–jgm–jmc, 2013 WL 2237820, at *21 n.23 (D. Vt. May 21, 2013) (quoting *Conway v. Cumming*, 161 Vt. 113, 116, 636 A.2d 735, 736 (1993)).  And as this Court recited in Ladd's case from 2009, "a temporary release program 'merely changes the location where the sentence is to be served.'"  *Ladd v. Thibault*, No. 1:08–cv–255, 2009 WL 3248143, at *6 (D. Vt. Oct. 6, 2009), *aff'd*, 402 F. App'x 618 (2d Cir. 2010) (quoting *Oberly v. Kearney*, No. Civ.A.99–480–GMS, 2000 WL 1876439, at *2 (D. Del. Dec. 15, 2000)).  Therefore, it appears from the Complaint that Ladd is still an inmate, but is serving his sentence on furlough in Newport.  At the hearing on the Motion, both parties confirmed that Ladd is on furlough presently.  Contrary to Ladd's suggestion, he is not an individual on parole.  (*See* Doc. 15 at 6 (stating in his response that "his conditional release under supervision is not incarceration nor is it an extension of imprisonment . . . .  When released into the community on a set of conditions as used by the same as parolees . . . ."))

As an incarcerated person, Ladd "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Stone v. White*, 7:15-cv-0097 (LEK/ATB), 2016 WL 1298725, at *6 (N.D.N.Y Mar. 31, 2016) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  Still, "freedom of association 'is among the rights least compatible with incarceration.'"  *Id.* (quoting *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003)).  While the freedom of association is not "terminated by incarceration," *Overton*, 539 U.S. at 131, the Supreme

12

Court in *Overton* found no need to "attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration" where "the challenged regulations bear a rational relation to legitimate penological interests." *Id.* at 132. The Supreme Court then stated the following:

> In *Turner* we held that four factors are relevant in deciding whether a prison regulation affecting a constitutional right that survives incarceration withstands constitutional challenge: whether the regulation has a "'valid, rational connection'" to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are "ready alternatives" to the regulation.

*Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89–91 (1987)).

First, according to an exhibit attached to Ladd's Complaint, it appears that Ladd's residency restriction was based on "a risk of danger to others." (Doc. 5-1 at 1 (state court ruling on Motion to Dismiss).) The restriction, therefore, is rationally related to the penological purpose of "preventing future crimes," *see Overton*, 539 U.S. at 133, or protecting a threatened individual—in this case Ladd's parole officer—and perhaps protecting "others" from harm as well (*see* Doc. 5-1 at 1). Second, Ladd can exercise his right to intimate association through the following "alternative means": living with family outside of Chittenden County, or interacting with family in numerous other ways. As for the third and fourth *Turner* factors, Ladd does not present any "ready alternatives" to the residency restriction or any discussion of prison resources, thus failing to meet his burden to "disprove" the validity of the restriction. *Overton*, 539 U.S. at 132 ("The

13

burden . . . is not on the State to prove the validity of the prison regulations but on the prisoner to disprove it.").

However, Ladd does state in his Opposition that "the alleged victim of [the] criminal act has relocated to a different office in the Waterbury area" (Doc. 15 at 6), apparently attempting to demonstrate that there is no longer a need for the restriction on his residence.  But Ladd did not allege this fact in his Complaint, and "[p]laintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss."  *Miley v. Hous. Auth.*, 926 F. Supp. 2d 420, 432 (D. Conn. 2013) (quoting *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013)).  Nonetheless, "the policy reasons favoring liberal construction of *pro se* complaints permit a court to consider allegations of a *pro se* plaintiff in opposition papers on a motion where . . . those allegations are consistent with the complaint."  *Elliott v. Nestle Waters N. Am. Inc.*, No. 13 Civ. 6331(RA), 2014 WL 1795297, at *7 (S.D.N.Y. May 6, 2014) (alteration in original) (quoting *Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246–47 (S.D.N.Y. 1998)).  Even if the Court *did* consider the new factual allegation, Ladd still fails to meet his burden to show the residency restriction is not rationally related to a legitimate penological purpose, i.e., protecting "others," not just the parole officer, from "risk of danger."  (*See* Doc. 5-1 at 1.)  It is unclear from the record whether the parole officer has any other connection to Chittenden County aside from the location of his office.  And, regardless, deference to the decision of Vermont's DOC is warranted here.  *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977) ("Because the realities of running a penal institution are complex

and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators . . . .  'Moreover, where state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities.'" (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1974))).

Accordingly, I recommend that the Court DISMISS Ladd's claim based on his right to freedom of association.

## V.    Fourteenth Amendment Equal-Protection Claim

Defendants argue that Ladd has failed to allege an equal-protection claim.  They assert that he "has not alleged that he was intentionally treated differently than any other offender serving a similar sentence for similar crimes with similar furlough revocation and disciplinary records who have threatened their probation officer in a similar manner" (Doc. 11 at 6), and, in addition, the "basis to restrict the location of his residence" was permissible (*id.* at 7).  Ladd argues that the "exile" from Chittenden County was not permissible (Doc. 15 at 7), and that he is being treated differently from individuals on supervision who have assaulted departmental staff, but who get to return to their counties after being convicted (*id.* at 7–8).

"The Equal Protection Clause requires that the government treat all similarly situated people alike."  *Gentile v. Nulty*, 769 F. Supp. 2d 573, 577–78 (S.D.N.Y. 2011) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  It also "protects prisoners from invidious discrimination."  *Siminausky v. Starkowski*, CASE NO. 3:15-cv-159 (VLB), 2016 WL 236208, at *8 (D. Conn. Jan. 20, 2016).  First, to establish an equal-protection claim, "a plaintiff must demonstrate that he was treated

15

differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Then, a plaintiff "must show that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not 'reasonably related to [any] legitimate penological interests.'" *Id.* at 129 (alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)). In addition, a plaintiff may bring a class-of-one claim under the Equal Protection Clause, alleging "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Under a class-of-one theory, "[t]he plaintiff must allege an 'extremely high' level of similarity with the person to whom he is comparing himself." *Siminausky*, 2016 WL 236208, at *8 (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005)). In fact, "[t]he plaintiff's circumstances and the other person's must be 'prima facie identical.'" *Id.* (quoting *Neilson*, 409 F.3d at 105).

Here, Ladd fails to allege an equal-protection claim. In the Complaint, he states that it is "standard practice" to "return to the area of the conviction" (Doc. 5 at 6), and that he "has the same right to return to the Chittenden County/Burlington area [like] Mr. Peterson Benjamin has on several occasions and other convicted offenders who are from the same area as [] the conviction" (*id.* at 7). Ladd's Complaint does not set forth any other allegations about those "convicted offenders" or about "Mr. Peterson Benjamin." In his Response, however, Ladd does state that "other offenders on supervision . . . caused assaults on departmental staff . . . but they are allowed to return to the same

county, the same city, town and under the same supervision of the P & P office countless

. . . times." (Doc. 15 at 8.) But that assertion is not enough to demonstrate any similarity

between Ladd and other offenders, and it certainly is not "sufficient to demonstrate the

level of specificity required by class-of-one claims." *Green v. McLaughlin*, 480 F. App'x

44, 47 (2d Cir. 2012). First, Ladd does not assert that those offenders were released on

Conditional Re-Entry Furlough, or that those other offenders threatened parole officers or

were deemed dangerous to others in those geographic locations to which they were

permitted to return.[1] His assertions are conclusory and therefore inadequate: "Well-pled

facts showing that the plaintiff has been treated differently from others similarly situated,

remains an essential component of [an equal-protection] claim. Conclusory allegations of

selective treatment are insufficient to state an equal[-]protection claim." *Abdur-Raheem

v. Wenderlich*, No. 07–CV–6247, 2012 WL 5185605, at *1 (W.D.N.Y. Sept. 19, 2012),

*report and recommendation adopted*, No. 07–CV–6247L, 2012 WL 5185191 (W.D.N.Y.

Oct. 18, 2012) (quoting *Bishop v. Best Buy, Co. Inc.*, No. 08 Civ. 8427(LBS), 2010 WL

4159566, at *11 (S.D.N.Y. Oct.13, 2010)); *see also Mohamed v. Powers*, 9:14-CV-1389

(TJM/TWD), 2015 WL 8492472, at *5 (N.D.N.Y. Dec. 10, 2015) ("Vague and

conclusory allegations[] are insufficient to plausibly suggest an equal[-]protection

violation.").

Furthermore, Ladd has failed to show the "extremely high" level of similarity

between himself and Mr. Peterson Benjamin, or between himself and another offender

---

[1] At the hearing on August 23, 2016, Ladd stated that other offenders *were* released on Conditional Re-Entry Furlough. Even if the Court considers this statement, Ladd still fails to allege a plausible equal-protection claim

similarly situated. *Siminausky*, 2016 WL 236208, at *8 (quoting *Neilson*, 409 F.3d at 104). For example, he references only Mr. Peterson Benjamin's name and the opportunities Benjamin had to return to a certain county—presumably the county in which Benjamin's conviction was based—but provides no other factual allegations that permit this Court to ascertain a plausible equal-protection claim. Thus, any asserted "class-of-one" claim fails for that reason as well.

Accordingly, I recommend that the Court DISMISS Ladd's equal-protection claim.

## VI.   Eighth Amendment

### A.   Overcrowding

Ladd appears to be raising two Eighth Amendment claims. The first concerns "overcrowding" in a prison facility. He asserts in his Complaint that "overcrowding" in prison has resulted from "this situation," which violated the Eighth Amendment. (Doc. 5 at 8.) Defendants argue that Ladd does not have standing to raise the overcrowding argument, due to his furlough status, and alternatively, overcrowding is not cruel and unusual punishment. (Doc. 11 at 7–8.)

Although Ladd presents this "overcrowding" argument in his Complaint, he does not address it again in his Response. Also, Defendants raise an issue of "standing" in their Motion, but do not address the possible application of the mootness doctrine. "[S]tanding must exist at the *inception* of a lawsuit," *Hirsch v. Qingdao Orien Commercial Equip. Co., Ltd.*, No. 12–CV–952 (RRM), 2015 WL 1014352, at *7 (E.D.N.Y. Mar. 6, 2015), including in lawsuits bringing claims for equitable relief,

*Zielinski v. DeFreest*, No. 12 Civ. 1160(JPO), 2013 WL 4838833, at *15 (S.D.N.Y. Sept.

10, 2013).  When Ladd filed his Complaint, he was incarcerated at the Southeast State

Correctional Facility (Doc. 5 at 1), and he challenged a condition of his confinement: the

overcrowding (*see id.* at 8).  An alleged "actual or imminent" injury therefore existed at

the filing of the Complaint, the injury was "fairly traceable" to the named Defendants,

and it could be "redressed by a favorable decision" from this Court.  *See Lujan v. Defs. of

Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted).

On the other hand, the mootness doctrine requires that "an actual controversy . . .

be extant at all stages of the case, not just at the time the complaint is filed."  *Thompson

v. Carte*r, 284 F.3d 411, 415 (2d Cir. 2002) (quoting *Beyah v. Coughlin*, 789 F.2d 986,

988 (2d Cir. 1986)).  Here, given Ladd's changed status since the filing of his Complaint,

mootness, not standing, is the relevant doctrine, and the Court raises it *sua sponte*.  *See

Muhammad v. City of New York Dep't of Corr.*, 126 F.3d 119, 122 (2d Cir. 1997)

("Neither party has raised the issue of mootness on appeal, but because it is a

jurisdictional question, we must 'examine the issue *sua sponte* when it emerges from the

record.'" (quoting *Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 82 (2d Cir. 1996))).

"The mootness doctrine 'ensures that the litigant's interest in the outcome

continues to exist throughout the life of the lawsuit . . . .'"  *Id.* at 123 (quoting *Cook v.

Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993)).  There is an exception to the mootness

doctrine, which is termed the "capable of repetition, yet evading review" exception, but

this exception "will not be applied unless '(1) the challenged action was in its duration

too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Id.* (alteration in original) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).

Here, Ladd is no longer incarcerated at the Southeast State Correctional Facility (*see* Docs. 8, 20 (Notices of Change of Address)), and has been released on "Conditional Re-Entry[] Furlough" in Newport (*see* Doc. 5 at 8).  The Second Circuit has stated that where a prisoner has been transferred from the facility allegedly responsible for the constitutional violations, that prisoner's claims for injunctive relief are moot.  *Beyah v. Coughlin*, 789 F.2d at 988; *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) ("Because Day is no longer housed at [Garner Correctional Institution], his claims for injunctive relief are moot."); *Thompson*, 284 F.3d at 415 ("A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility." (citing *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996)).  Thus, Ladd's "overcrowding" claim is moot, which he also conceded at the motion hearing.  In addition, Ladd does not set forth any allegations indicating that he may once again be in custody at the Southeast State Correctional Facility.  *See, e.g.*, *Muhammad*, 126 F.3d at 124 ("Muhammad cannot make this showing, for he has stated no basis for an expectation that he will again find himself in the custody of the DOC and subject to its policies.").  Therefore, the exception to the mootness doctrine does not apply to Ladd's claim, and the overcrowding claim is moot.

### B.      Residential Restriction as Cruel and Unusual Punishment

In his Response, Ladd adds that his residence restriction amounts to cruel and unusual punishment.  (Doc. 15 at 8–9, 12.)  In Defendants' Reply, they argue that "[t]o the extent the Court allows [Ladd] to proceed with this claim, it should also be dismissed" because the residence restriction does not amount to a violation of the Eighth Amendment.  (Doc. 16 at 2.)

Typically, "[a] plaintiff may not amend his or her pleadings through an opposition brief." *Frederick v. Wells Fargo Home Mortg.*, No. 13–CV–7364 (DLI)(LB), 2015 WL 1506394, at *16 (E.D.N.Y. Mar. 30, 2015), *aff'd*, No. 15–1457, 2016 WL 2893211 (2d Cir. May 18, 2016) (summary order).  However, because "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (alteration in original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)), I will address Ladd's new argument here.

Ladd asserts that the restriction on his residence is "an act of cruel and unusual punishment as it was not part of his original sentence imposed."  (Doc. 15 at 12.)  But Ladd fails to allege a plausible Eighth Amendment claim.  To establish a claim of cruel and unusual punishment under the Eighth Amendment, "the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). The first prong requires the plaintiff to "demonstrate that the conditions of his confinement result 'in unquestioned and serious deprivations of basic human needs,'" *id.*

(quoting *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985)), or "'deprive inmates of the minimal civilized measure of life's necessities,'" *Anderson*, 757 F.2d at 35 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  Under the second prong, "the plaintiff must demonstrate that the defendants imposed those conditions with 'deliberate indifference.'"  *Jolly*, 76 F.3d at 480 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  The Eighth Amendment "prohibits punishments which 'involve the unnecessary and wanton infliction of pain,' 'are grossly disproportionate to the severity of the crime,' or 'are totally without penological justification.'"  *Williams v. Fitzpatrick*, No. 1:03CV11, 2006 WL 1889964, at *2 (D. Vt. July 10, 2006) (quoting *Rhodes*, 452 U.S. at 346).

First, the allegation that the residential restriction was not a part of Ladd's "original sentence" is insufficient to satisfy either prong of the test for Eighth Amendment violations; it fails to indicate what is "cruel and unusual" about the condition.  Second, Ladd's allegations regarding the residential restriction cannot be construed as a serious deprivation.  In fact, Ladd can still interact with family members and live with them outside of Chittenden County.  "The Supreme Court has recognized that, in assessing the objective seriousness of alleged Eighth Amendment violations, 'discomfort is part of the penalty that criminal offenders pay for their offenses against society,'" *Byrne*, 2013 WL 2237820, at *17 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)), as are conditions that are "restrictive and even harsh," *Rhodes*, 452 U.S. at 347.  Any discomfort and inconvenience Ladd experiences from the restrictive residential condition are not objectively serious.

As for "deliberate indifference," Ladd has not alleged any facts concerning Defendants' states of mind.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("[A] prison official must have a 'sufficiently culpable state of mind.'  In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." (citations omitted)).  The Complaint only alleges that the Commissioner of DOC gave an "unsatisfactory response" during the grievance process (Doc. 5 at 6), and "the department or employees from the Burlington Parole and Probation Office" held a "secret meeting" in which Ladd's exile was decided (*id.* at 7).  Because these allegations fail to demonstrate any culpable state of mind, Ladd's Eighth Amendment claim fails, and I recommend that the Court DISMISS the claim.

## VII.   Abuse of Discretion

Ladd next claims that the DOC's decision to prohibit Ladd from residing in Chittenden County was not grounded in "statutory authority" and was "an extreme and arbitrary abuse of discretion."  (Doc. 5 at 7.)  Defendants assert that the Court should not exercise supplemental jurisdiction over any state-law claim present in Ladd's Complaint (Doc. 11 at 10), and, alternatively, Ladd fails to state a claim under Rule 75 of the Vermont Rules of Civil Procedure (*id.* at 10–11).

First, "a federal court's grant of injunctive relief against a state official may *not* be based on violations of state law."  *Dube v. State Univ. of New York*, 900 F.2d 587, 595 (2d Cir. 1990).  Here, Ladd seeks injunctive relief against Defendants in their official capacities, and thus, to the extent Ladd raises state-law claims, those are precluded.

23

*See id.* (modifying district court order "to preclude any injunctive relief against the defendants acting in their official capacities on the basis of Dube's state[-]law claims").[2]

Furthermore, I recommend that the Court refrain from exercising supplemental jurisdiction over any state-law claim.  *See* 28 U.S.C. § 1367(c)(3).  Therefore, the Court need not address Ladd's additional arguments.  (*See* Doc. 15 at 12–13.)  Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.*  However, a court has the discretion to "decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d. Cir. 2011) ("In providing that a district court 'may' decline to exercise such jurisdiction, [section 1367(c)] is permissive rather than mandatory."  (alteration in original) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003))). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

---

[2]  In his Response, Ladd states "the claims before this Court are not state claims but federal claims." (Doc. 15 at 13.)  Therefore, I am not sure of the basis for Ladd's "Claim 3." (*See* Doc. 5 at 7.) Out of an abundance of caution, I proceed with a recommendation regarding any potential state-law claims set forth in the Complaint.

Here, the parties have presented no compelling reason for the Court to retain supplemental jurisdiction over any state-law claims.  Also, given the absence of a federal-law claim, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction here.  Therefore, I recommend that the Court decline to exercise supplemental jurisdiction over any state-law claims alleged in Ladd's Complaint.

## VIII.  Leave to Amend

The Court must consider whether to grant Ladd leave to amend his Complaint.  "A *pro se* complaint 'should not [be] dismiss[ed] without [the court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'"  *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (first and second alterations in original) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).  "Leave to amend may properly be denied if the amendment would be 'futil[e],'" *id.* at 140 (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)), or if Plaintiff has "'repeated[ly] fail[ed] to cure deficiencies'" through prior amendments, *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman*, 371 U.S. at 182).

Ladd, a *pro se* litigant, should be given the opportunity to amend his Complaint.  Any amended filing should be titled "Amended Complaint" and should contain all claims against all parties, as it will supersede the original Complaint in all respects.  The Court should require that an Amended Complaint, if any, be filed within 30 days of its ruling on

this Report and Recommendation.  Ladd's failure to amend his Complaint should result in dismissal of this case with prejudice.

## Conclusion

For these reasons, I recommend that the Court GRANT Defendants' Motion to Dismiss (Doc. 11), and I further recommend that, if this Report and Recommendation is adopted by the Court, Ladd be allowed 30 days to file an amended complaint.  Failure to file an amended complaint within that time frame should result in the dismissal of Ladd's claims with prejudice.

Dated at Burlington, in the District of Vermont, this 12th of September, 2016.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).